IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY BURNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 3:09-CV-858-WKW [WO] |
| v. | ) | |
| | ) | |
| COMMISSIONER NANCY T. | ) | |
| BUCKNER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jimmy Burns brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Nancy T. Buckner, Marsha Hanks, and the Tallapoosa County Department of Human Resources ("Tallapoosa County DHR") misused state legal proceedings to collect delinquent child support payments in contravention of certain exemption provisions of the Social Security Act. 42 U.S.C. §§ 407(a), 1383(d)(1). This cause is before the court on Defendants' Motion for Summary Judgment (Doc. # 36), which has been fully briefed and is ready for adjudication. Upon careful consideration of counsel's arguments, the relevant law, and the record as a whole, the court finds that Defendants' motion is due to be granted.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The evidentiary submissions on file amount to several affidavits and provide little in the way of factual background. Defendants submit three affidavits in support of their Motion for Summary Judgment. The first, an affidavit from Florence Copeland of the Alabama Department of Human Resources, provides a summary of the underlying state proceedings. (Copeland Aff. (Doc. # 36, Ex. A).) The other two affidavits, from Defendant Buckner, the Commissioner[1] of the Alabama Department of Human Resources, and Defendant Hanks, the Director[2] of the Tallapoosa County DHR, simply contain statements denying any involvement in the state court proceedings and any knowledge of Mr. Burns's social security or medical status. (Buckner Aff. (Doc. # 36, Ex. B); Hanks Aff. (Doc. # 36, Ex. C).) Mr. Burns submits no evidence with his response brief. The only evidence on file from Mr. Burns is an affidavit submitted with his original complaint, in which he states that "SSI benefits" are his only source of income (Doc. # 1, Attach. 1) and an affidavit submitted in support of his motion for a preliminary injunction, in which he summarizes the state proceedings and the Tallapoosa County DHR's involvement in the state proceedings (Burns Aff. (Doc. # 16, Attach. 1)). The following facts are derived from this limited record.

Mr. Burns suffers from a "rare and highly debilitating skin condition" called pemphigus foliaceous (the modern name for leprosy), which requires frequent medical

---

[1] Ms. Buckner states in her affidavit that she is the "Commissioner of the Department, and thereby serve[s] as the 'chief executive officer of the Department.'" (Buckner Aff. 1.)

[2] Ms. Hanks states in her affidavit that as director of the Tallapoosa County DHR, she "serve[s] as the chief executive officer" of the Department. (Hanks Aff. 1.)

attention.  (Burns Aff. ¶¶ 4-5.)  As his medical debts continued to accumulate, Mr. Burns became unable to support himself and applied for Supplemental Security Insurance benefits ("SSI benefits") from the Social Security Administration.  (Burns Aff. ¶ 5.)

As of the filing of this suit, Mr. Burns owed several thousand dollars in unpaid child support.  (Burns Aff. ¶ 2; Copeland Aff., Attach. 5.)  The Tallapoosa County DHR assigned a caseworker to Mr. Burns's child support case, presumably to oversee the state proceedings related to his child support case.  (Copeland Aff. 1.)  Mr. Burns informed the Tallapoosa County DHR of his medical and financial status and that he was in the process of applying for SSI benefits.  (Burns Aff. ¶ 5.)

Sometime before January 2008, prior to receiving his SSI benefits, Mr. Burns was arrested and served time in the Tallapoosa County jail for contempt of court for failing to pay his child support.  (Burns Aff. ¶ 5.)  During this time, Mr. Burns's family helped Mr. Burns secure a job with Darwin Dobbs Motors so that he could begin paying off his child support debt upon release from jail.[3]  (Burns Aff. ¶ 5.)  Between January and September 2008, money was withheld from Mr. Burns's paycheck for this purpose.  (Burns Aff. ¶ 6; Copeland Aff. 1 (stating that an income withholding order was issued to Mr. Burns's employer in March 2008).)

---

[3] Defendants provide no evidence of this arrest other than the statement in Ms. Copeland's affidavit that five proceedings have taken place in Mr. Burns's child support case.  (Copeland Aff. 1.) Ms. Copeland does not mention the arrest specifically, and Defendants attach no court materials related to this arrest.

3

Mr. Burns began receiving his SSI benefits in November 2008, at which time he was no longer working at Darwin Dobbs Motors.  (Burns Aff. ¶ 6.)  Mr. Burns's sole source of income has consisted of SSI benefits since that date.  (Burns Aff. ¶ 6; *see also* Doc. # 42, Ex. 1.)

On December 2, 2008, a second contempt petition for failure to pay child support was filed against Mr. Burns in state court.  (Copeland Aff., Attach. 5.)  The hearing on the motion was set for May 21, 2009.  (Copeland Aff., Attach. 6.)  Upon Mr. Burns's failure to appear at the May 21, 2009 hearing, a warrant for his arrest was issued.  (Copeland Aff. 2, Ex. 8.)  This warrant was subsequently withdrawn, and the hearing on the contempt petition was rescheduled for September 18, 2009.  (Copeland Aff. 2, Exs. 9-10.)  The hearing was continued at the request of Mr. Burns's counsel, and, according to Defendants, the contempt petition is still pending in state court.  (Copeland Aff. 2-3, Ex. 11.)  A motion to dismiss the petition was filed in December 2009.  (Doc. # 42, Ex. 1.)[4]  There is no other evidence regarding the status of the state case, and it appears that no action has been taken since December 2009.[5]

Ms. Copeland's and Mr. Burns's affidavits provide conflicting testimony as to whether the Tallapoosa or Alabama DHR (through their agents) had knowledge that Mr.

_____

[4] This motion, as well as all other relevant state court filings attached to Defendants' motion for summary judgment, are part of the evidentiary record in this case and will be considered.  Thus, Mr. Burns's request that the court take judicial notice of this filing (Doc. # 42) is DENIED as moot.

[5] The court notes that Defendants' affidavits were taken in September 2009 and that the parties have provided no updates on the status of the state proceedings or what has occurred in the last six months.

Burns's sole income consisted of SSI benefits.  Ms. Copeland testified in her affidavit that "Mr. Burns has not provided to the Department of Human Resources any documentation or evidence, such as a statement from the Social Security Administration, that he is a recipient of Social Security benefits."  (Copeland Aff. 3.)  However, according to Mr. Burns's affidavit, the financial support workers at the Tallapoosa Country DHR told Mr. Burns that "their system showed that [he] was receiving SSI benefits."  (Burns Aff. ¶ 7.)  Mr. Burns was told repeatedly that he had to pay his child support payments out of his SSI benefits, and that if he did not, he would go to jail.  (Burns Aff. ¶ 7.)  The financial workers at the Tallapoosa DHR repeated this demand in court on April 29, 2009, and, according to Mr. Burns, "the Tallapoosa County district court judge ordered [Mr. Burns] to pay $ 676.00," which was the total amount of his monthly SSI benefits.  (Burns Aff. ¶ 8.)  Mr. Burns further states in his affidavit that these repeated demands to pay money out of his SSI benefits, and the Tallapoosa County DHR's repeated attempts to schedule court dates conflicting with his doctor's appointments, "placed a great burden on [him] and caused great financial and emotional difficulty."  (Burns Aff. ¶ 9.)

Mr. Burns filed this action on September 10, 2009.  (Doc. # 1.)  The amended complaint alleges that Defendants "prosecuted the state legal proceedings in bad faith and in flagrant and patent violation of clearly established federal laws prohibiting collection of Plaintiff's SSI benefits."  (Doc. # 23, ¶ 35.)  The court denied Mr. Burns's motions for a temporary restraining order (Doc. # 3) and preliminary injunction (Doc. # 24).

Remaining in this action are Mr. Burns's § 1983 claims for a permanent injunction restraining the enforcement and prosecution of the state legal proceedings, a declaratory judgment that the prosecution and enforcement of the state legal proceedings are "unconstitutional and in violation of [Mr. Burns's] civil rights," and compensatory and punitive damages for humiliation, pain and suffering, mental anguish, and emotional distress. (Am. Compl.)  This cause is before the court on Defendants' motion for summary judgment on all claims (Doc. # 36), Mr. Burns's response (Doc. # 49),[6] and Defendants' reply (Doc. # 50).

### III.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*); Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."

---

[6] Mr. Burns requests that the court treat his response brief as a motion for partial summary judgment on his claims for declaratory judgment and permanent injunction. (Pl.'s Resp. Br. 19-20 (Doc. # 49).)  According to the Uniform Scheduling Order entered on November 17, 2009, the dispositive motion deadline was February 19, 2010.  (Doc. # 31.)  Because Mr. Burns's response brief was filed on April 30, 2010, well beyond this deadline, his request is DENIED.

6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists.  Fed. R. Civ. P. 56(e)(2); *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  What is material is determined by the substantive law applicable to the case.  *Celotex Corp.*, 477 U.S. at 248.  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).  "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing

that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*).  Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

## IV.  DISCUSSION

### A.    Qualified Immunity

Defendants Buckner and Hanks contend that they are immune from suit for money damages in their individual capacities under the doctrine of qualified immunity.  Qualified immunity protects government officials performing discretionary functions from liability for civil damages, so long as their conduct does not violate "'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Before inquiring into the particular federal statutory or constitutional rights at issue, the court must determine whether the officials have met their burden in establishing that "'[they were] acting within the scope of [their] discretionary

authority when the allegedly wrongful acts occurred.'" *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). If the court finds that the officials were acting within their discretionary authority, the burden shifts to the plaintiffs to show that the defendants are not entitled to qualified immunity. *Id.* (citing *Lee*, 284 F.3d at 1194). To meet their burden, the plaintiffs must satisfy the test established in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), laid out below.

In *Saucier*, the United States Supreme Court created a two-step process for resolving government officials' qualified immunity defense. 533 U.S. at 201. The Court held that the threshold question in qualified immunity cases is whether the facts, taken in the light most favorable to the plaintiff, show the violation of a federal statutory or constitutional right. *Id.* Second, "if a violation could be made out," the court must determine whether the right at issue was "clearly established." *Id.* On reconsidering this stringent two-step process, the Supreme Court in *Pearson v. Callahan* concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." 129 S. Ct. 808, 818 (2009). Instead, judges "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

## 1.    *Discretionary Authority*

Defendants have the initial burden of establishing that they were acting within their discretionary authority when the alleged federal statutory violation occurred. Defendants

maintain that they have met their burden because the allegations[7] "involve choice," and are "by their very nature discretionary functions."  (Defs.' Summ. J. Br. 15 (Doc. # 36).) Initiating a legal proceeding and "instruct[ing], supervis[ing], control[ing] and disciplin[ing]" financial support workers do, as Defendants contend, involve an element of choice; however, the Eleventh Circuit has emphasized that in the qualified immunity context, "choice" is not the proper inquiry.  Rather, the court must assess whether the acts in question "are of a type that fell within the [defendants'] job responsibilities."  *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  The proper inquiry is twofold: (1) whether the government employee was "performing a legitimate job-related function (that is, pursuing a job-related goal)" and (2) whether the government employee, in pursuit of this legitimate job-related function, used "means that were within his power to utilize."  *Id.*

It is unclear what Defendants Buckner's and Hanks's job descriptions are, or what the "job-related goals" of the Tallapoosa County DHR and Alabama DHR entail.  Nonetheless, there can be no doubt that as the chief executive officer of a state human resources department, oversight of legal proceedings instituted on behalf of that department is a "legitimate job-related function."  Nor can there be any doubt that supervising the caseworkers assigned to specific legal proceedings (in this case, a child support case) constitutes "means that were within [Defendants'] power to utilize."  Accordingly, the court

---

[7] Mr. Burns alleges that Defendant Hanks violated clearly established law by initiating the state legal proceedings (Am. Compl. ¶ 22) and that both Defendant Hanks and Defendant Buckner "failed to instruct, supervise, control and discipline on a continuing basis financial support workers" to refrain from unlawfully prosecuting the state proceedings.  (Am. Compl. ¶¶ 24, 30.)

finds that Defendants Buckner and Hanks were acting within their discretionary authority when the alleged federal statutory violations occurred.

### 2.    *Federal Statutory Violations*[8]

The burden shifts to Mr. Burns, who must demonstrate that a genuine issue of material fact exists that Defendants Buckner and Hanks violated Mr. Burns's clearly established federal statutory rights.  *Saucier*, 533 U.S. at 201.  The statute at issue – § 407(a) of the Social Security Act (alternatively referred to as the "anti-attachment provision") – prohibits the "execution, levy, attachment, garnishment, or other legal process" of money received from the Social Security Administration.  Specifically, § 407(a) states:  "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ."  Section 1383(d)(1) provides that § 407(a) applies to SSI benefits.  Neither party disputes that pursuant to these two statutes, SSI benefits are not subject to garnishment or withholding for the payment of child support.  (*See* Defs.' Summ. J. Br. 10-12; Pl.'s Resp. Br. 7-14 (Doc. # 49).)  The parties do dispute, however, whether the state proceedings in this

_____

[8] Mr. Burns also alleges that Defendants' "purposeful, malicious, and/or reckless violation and disregard for the clear preemptive and preclusive effect of 42 U.S.C. §§ 407(a) and 1383(d)(1)" violated his "constitutional rights afforded to him pursuant to the Equal Protection and Due Process Clauses of the Fourteenth Amendment."  (Am. Compl. ¶ 16.)  These allegations border on the unintelligible.  In any event, because a violation of a constitutional right separate from the alleged violations of the federal statutory rights has not been argued, and cannot be independently ascertained on this record, any constitutional claim fails for the reason that, at best, its viability is dependent upon there first being a violation of a federal statute.

case fall within the meaning of "other legal process" and whether there is sufficient evidence to create a genuine issue of material fact that Defendants Buckner and/or Hanks were involved in the alleged violations.

a.   **"Other Legal Process"**

Mr. Burns claims that Defendants violated the anti-attachment provision of the Social Security Act by instituting the state legal proceedings and failing to supervise the caseworkers assigned to those proceedings.  He acknowledges that Defendants have not issued an administrative income withholding order,[9] but maintains that the proceedings – specifically, those instituted after Defendants had knowledge that SSI benefits were Mr. Burns's sole source of income – nonetheless constitute "other legal process" under § 407(a). In other words, Mr. Burns contends that rather than seek an income withholding order (which would clearly violate the anti-attachment provision), Defendants attempted to do an end-run around the anti-attachment provision by instituting the state proceedings and seeking a court order requiring Mr. Burns to pay the child-support payments out of his SSI benefits. Thus, the first issue is whether the manner of gaining control over Mr. Burns's SSI benefits involved "other legal process." *See Wash. State Dep't of Soc. & Health Serv. v. Keffeler*, 537 U.S. 371, 383 (2003).

---

[9] The evidence establishes that an income withholding order was issued when Mr. Burns had an income – *i.e.*, when he was working for Darwin Dobbs Motors from January 2008 to September 2008 – but not when his sole income consisted of SSI benefits.  (Burns Aff. ¶ 5.)

The Supreme Court has clarified that the phrase "other legal process"

should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Keffeler*, 537 U.S. at 385.  As Defendants contend, nothing in § 407(a) exempts Mr. Burns from the obligation to attend state court hearings.  If it is true that Mr. Burns's sole source of income consists of his SSI benefits (and both parties seem to agree that it is[10]), nothing precludes Mr. Burns from making that argument to the state court.  The state court should have the opportunity to consider opposing arguments and relevant evidence (including evidence of other income, should there be any) in making the appropriate finding.  An order to *attend* a proceeding is not equivalent to an order requiring Mr. Burns to pay his child support obligations out of his SSI benefits, and, accordingly, does not constitute a "judicial mechanism" "by which control over property passes from one person to another" in satisfaction of an unpaid debt.  *Keffeler*, 537 U.S. at 385.

However, Mr. Burns provides evidence that the Tallapoosa County DHR continued to seek court orders requiring the payment of his SSI benefits after receiving notice that said benefits were Mr. Burns's sole source of income.  In *Keffeler*, the Supreme Court noted that the term "legal process," as defined by the Commissioner of the Social Security

---

[10] The motion to dismiss the contempt petition, filed in state court in December 2009, provides that "the Tallapoosa County Department of Human Resources has, with due diligence through their [sic] own investigation, determined that the defendant has no income other than SSI."  (Doc. # 42, Ex. 1.)

Administration, includes "the means by which a court . . . compels compliance with its demand; generally, it is a court order." *Id.* (internal citations omitted).  Mr. Burns testified in his affidavit that the "Tallapoosa County Department of Human Resources repeatedly demanded that [he] pay $676.00 to cover three months of [his] SSI money received" and that "[a]s a result, the Tallapoosa County [D]istrict [C]ourt judge ordered [him] to pay $676.00." (Burns Aff. ¶ 8.)  Mr. Burns has thus presented some evidence that the Tallapoosa County DHR used "some judicial mechanism" to gain control of over Mr. Burns's SSI benefits in satisfaction of his unpaid child support payments.  *Keffeler*, 537 U.S. at 385.  However, "some evidence" is not the standard – the evidence must be such that a reasonable fact-finder could return a verdict in Mr. Burns's favor. *Greenberg*, 498 F.3d at 1263; *Waddell*, 276 F.3d at 1279.  Evidence that "is merely colorable, or is not significantly probative" is not sufficient to overcome summary judgment.  *Anderson*, 477 U.S. at 249 (internal citation omitted). Notably, Mr. Burns has not produced the court order to which he refers in his affidavit.

Affidavit testimony notwithstanding, Mr. Burns has failed to meet his burden under Rule 56(c), for even if there is a genuine issue of material fact that Mr. Burns's SSI benefits were subjected to "other legal process" in contravention of § 407(a), there is no evidence tying Defendants Buckner or Hanks to that violation.

### b.    Defendants Buckner's and Hanks's Involvement

Defendants Buckner and Hanks maintain that they had no knowledge of or involvement in the state legal proceedings, and, therefore, they could not have violated Mr.

14

Burns's federal statutory rights.  In their respective affidavits, Defendants Buckner and Hanks state that they did not know that Mr. Burns's only source of income was SSI benefits; that they had no knowledge that the compliance hearings in the state court corresponded to the disbursement of Mr. Burns's SSI benefits; and that circumventing the anti-attachment provision was not the purpose of the state proceedings.  (Buckner Aff.; Hanks Aff.)  The evidence shows that the Tallapoosa County DHR assigned Ms. Copeland to work as the caseworker overseeing the child support proceedings.  However, it is well established that state actors such as Defendants Buckner and Hanks "cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978).  Thus, the acts of an agent – here, the caseworker – cannot, alone, serve as the basis for Defendant Buckner's or Defendant Hanks's § 1983 liability.

Mr. Burns contends that even if Defendants Buckner and Hanks are not directly responsible for the case management, they are nonetheless liable for their acts as supervisors. "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation."  *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).  Mr. Burns has not presented any evidence of personal participation on the part of Defendant Buckner or Defendant Hanks.  Nor has he presented any evidence of a "causal connection linking the supervisor[s'] actions with the violation[s]." *Id.*

At most, Mr. Burns has presented some evidence – in the form of his own affidavit testimony – demonstrating that the Tallapoosa County DHR abides by a custom or policy of instituting legal proceedings first and asking questions later.[11]   However, this testimony, alone, does not implicate Defendants Buckner or Hanks.  It is conceivable that they – as Commissioner and Director of their respective departments – had at least some knowledge, oversight responsibilities, and/or policy-making abilities related to how and when their respective departments instituted state proceedings.  However, Mr. Burns has provided no evidence to that effect.  He has not presented any evidence of either Defendant's job description; nor has he presented any evidence of either Defendant's supervisory, disciplinary, or policy-making roles.  In sum, there is no evidence linking Defendant Buckner or Defendant Hanks to the actions of this particular case or this particular caseworker.[12]  Thus, although there may be a genuine issue of material fact that "legal process" was used to procure Mr. Burns's SSI benefits in violation of § 407, there is no genuine issue of material fact that these two Defendants had any part in that violation.

---

[11] For example, Mr. Burns testified in his affidavit that SSI benefits have been his only source of income since November 2008, and that he communicated this information to the Tallapoosa County DHR on numerous occasions.  Notwithstanding Mr. Burns's attempts to communicate his financial and medical status to the Tallapoosa County DHR, he was subjected to state court proceedings for an entire year until the Tallapoosa County DHR, after conducting "[its] own investigation" acknowledged that Mr. Burns's sole income consisted of SSI benefits and filed a motion to withdraw the contempt petition.

[12] Mr. Burns attempts to create a genuine issue of material fact by citing various portions of his complaint.  (*See* Pl.'s Resp. Br. 25 ("The facts alleged throughout Plaintiff's complaint clearly set out that Defendants failed to train and supervise financial support workers.  Plaintiff's complaint raises genuine issues of material fact with respect to its claim of failure to train and supervise.").)  Clearly this is not the standard on summary judgment.  A plaintiff cannot overcome summary judgment by relying on the complaint alone.  Mr. Burns must point to *evidence* beyond the complaint that creates a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 324; *Clark*, 929 F.2d at 608.

### 3.     Summary

Because there is no evidence that Defendants Buckner and Hanks violated Mr. Burns's federal statutory rights, it is unnecessary to address the clearly established prong of the qualified immunity analysis.  Defendants Buckner and Hanks, therefore, are entitled to qualified immunity and summary judgment on Mr. Burns's § 1983 claims brought against them in their individual capacities for money damages.

**B.**     **§ 1983 Claims for Money Damages Against the Tallapoosa County DHR and Buckner and Hanks in Their Official Capacities**

Defendants move for summary judgment on the § 1983 claims for money damages asserted against the Tallapoosa County DHR and against Defendants Buckner and Hanks in their official capacities.  Defendants maintain that such claims are not cognizable under § 1983 and that Eleventh Amendment immunity applies.

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); however, § 1983 only allows for suits against "persons."  42 U.S.C. § 1983 ("Every person who, under color of any statute . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, shall be liable to the party injured in an action at law . . . .").  State agencies and state officials acting in their official capacities are not considered "persons" under § 1983 when

17

sued for money damages.[13]  *See id.* at 72 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").  It is undisputed that the Tallapoosa County DHR is a state agency, *see Ex parte Macon County Dep't of Human Res.*, 716 So. 2d 743 (Ala. Civ. App. 1998), and that Defendants Buckner and Hanks are state agents who were acting within their official duties.  Therefore, Defendants' motion for summary judgment is due to be granted on this basis.

Moreover, even if Mr. Burns could bring suit under § 1983, these claims would nonetheless be barred by Eleventh Amendment immunity.  The Eleventh Amendment bars suits for damages against states, state agencies, and state officials acting in their official capacities.  *Papasan v. Allain*, 478 U.S. 265 (1986).  Courts have recognized two exceptions to Eleventh Amendment immunity – state waiver and congressional abrogation – neither of which apply to this case.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *Seminole Tribe v. Florida*, 517 U.S. 44, 55-56 (1996).

Mr. Burns does not dispute that the Tallapoosa County DHR is a state agency, or that Defendants Buckner and Hanks are state officials who were acting in their official capacities at the time of the alleged federal statutory violations.  Instead, Mr. Burns relies on two Alabama Supreme Court cases to support his contention that an exception to the doctrine of federal sovereign immunity applies in this case, namely, that sovereign immunity does not protect acts done "willfully, maliciously, illegally, fraudulently, in bad faith, beyond [one's]

---

[13]  A state official in his or her official capacity is considered a person under § 1983 when sued for injunctive relief.  *Will*, 491 U.S. at 71 n.10.

authority, or under a mistaken interpretation of the law."  Mr. Burns's argument lacks merit, as the cases upon which he relies – *Mitchell v. Davis*, 598 So. 2d 801 (Ala. 1992) and *Phillips v. Thomas*, 555 So. 2d 81 (Ala. 1989) – concern state sovereign immunity for state tort claims, and, therefore, are irrelevant to the case at hand.  *See Phillips*, 555 So. 2d at 83 ("[A] state officer or employee may not escape individual tort liability by arguing that his mere status as a state official cloaks him with the state's constitutional immunity." (internal quotations omitted)).  Accordingly, summary judgment is due to be granted on all claims for money damages against the Tallapoosa County DHR and on all claims for money damages against Defendants Buckner and Hanks in their official capacities.

C.     **§ 1983 Claims for Injunctive Relief Against the Tallapoosa County DHR and Buckner and Hanks in Their Official Capacities**

Finally, Defendants move for summary judgment on the § 1983 claims for injunctive relief asserted against the Tallapoosa County DHR and against Defendants Buckner and Hanks in their official capacities.  Mr. Burns requests that the court enjoin and restrain Defendants from enforcing and prosecuting the underlying state case "against Plaintiff and his SSI benefits."  (Am. Compl. ¶ 16.)

To obtain a permanent injunction, Mr. Burns must show: "(1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief."  *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117,

19

1128 (11th Cir. 2005).  Mr. Burns has failed to present any evidence with respect to the third element – that irreparable harm will result if the court does not enjoin Defendants from enforcing and prosecuting the underlying state child-support case.  From the limited evidence in the record, it appears that the only issue pending in the state court is the contempt petition. In December 2009, the Tallapoosa County DHR filed a motion requesting that the state court dismiss the contempt petition, conceding that the Tallapoosa County DHR, "with due diligence through [its] own investigation, determined that the defendant has no income other than SSI."  (Doc. # 41, Attach. 1.)  Accordingly, there is no evidence that Mr. Burns will suffer irreparable harm absent court intervention,[14] and Defendants' motion for summary judgment on Mr. Burns's § 1983 claim for a permanent injunction is due to be granted on this basis.

## V.  CONCLUSION

Based on the foregoing, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 35) is GRANTED.  An appropriate judgment will be entered.

DONE this 18th day of May, 2010.

/s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[14]  Moreover, as to Defendants Buckner and Hanks, there is an absence of evidence of a federal statutory violation; hence, Mr. Burns fails to satisfy the first element of the permanent injunction standard as to these Defendants.  *Alabama*, 424 F.3d at 1128.